Com. ex rel. Williams v. Provident Life Assn., Appellant.

*Mutual life insurance—Forfeiture—Estoppel.*

The by-laws of a mutual life insurance association did not provide the terms or conditions upon which a member might be reinstated after forfeiture of membership, nor was any reference made to the subject in the application or policy. In the assessment notice it was stated that no reinstatement could be made or payment received except upon condition that the assured was alive and in good health. Plaintiff failed to pay several assessments, and was served with the usual notice containing the statement as to reinstatement. He paid all the past assessments and furnished proof to the company that he was in good health. He subsequently paid other assessments. All of the assessments were received by the company without objection or condition. *Held*, that the action of the company estopped it from asserting a forfeiture of plaintiff's membership.

Argued Jan. 23, 1894. Appeal, No. 419, Jan. T., 1893, by defendant, from judgment of C. P. No. 3, Phila. Co., June T., 1892, No. 225, on verdict for plaintiff. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Mandamus to compel restitution of Carter Williams to membership in defendant company.

The facts appear by the opinion of the Supreme Court.

Defendant's answer averred that plaintiff's membership lapsed by reason of nonpayment of assessments, that payment of arrears in assessments were made to the agent with an application for reinstatement, but that the money was returned to the agent and the reinstatement refused.   The answer was traversed, plaintiff alleging that payments were received unconditionally and that he was duly reinstated.   Issue joined.

The court charged in part as follows :

"It appears that there is a clause in this policy which says that there may be no waiver of the forfeiture, except in writing, signed by the president or secretary of the company.   [That binds all of the parties in the case, and if this case turned merely upon the question of the waiver it would be my duty to instruct you that there had been no waiver of the forfeiture, in accordance with the terms of the policy, but it does not turn upon that point alone, as I shall show you in a moment.   Because, while there is an express covenant as to the waiver, there is a further covenant contained in the by-laws, in the following language :  'Only as many members as shall pay their mortality assessments within thirty days after the date of the notice shall be counted in determining the assessment basis of the death claim ; others shall be declared forfeited in like manner as those who fail to pay their annual dues with opportunity for reinstatement upon similar conditions.'   It thus appears that there is not only a provision that there may be a waiver of the forfeiture by the president or secretary, but there is another method by which the forfeiture may be set aside or made of no effect, and that is by reinstatement.] [2] . . . .

"It appears that the plaintiff applied to the company for reinstatement, and that he did receive from them a certificate of their own preparation, which has been offered in evidence, in which he formally made application to be reinstated, and in which the physician certifies to his insurable health, and for which the plaintiff paid a fee to the company, and which was returned by the company.   [In the absence of anything further in the case it might be assumed that the conditions needful, and which were not expressed in the body of the contract, were the conditions exacted by the company when they sent him

the proper application for reinstatement. When I said there was no evidence in this contract as to the terms upon which the reinstatement could be had, I should have added that there was no oral testimony as to those conditions.] [3] It is true that something has been said about the power of the company to reinstate a man after the ninety days forfeiture had expired, but [there is no evidence which would bind this plaintiff, for it is not in the by-laws, in accordance with the terms of the policy, and, in the absence of such terms, no further agreement than that set up in the policy would bind this plaintiff. He sent this application for reinstatement to the company. His statement is that he paid the money without any conditions. That, on the contrary, the agent of the company, who was the general agent, said to him that it would be all right, and received the money.] [1, 4]

" There is also another element in this case. It appears that the plaintiff received, after forfeiture had occurred, six different papers, five of them mortality assessments and one the assessment of his semi-annual dues; [that he received them from the secretary of the company in Baltimore; that they were sent from the home office to him by the person authorized to sign and effect waivers of forfeitures; and that they were received by this plaintiff after, according to the evidence, there was a technical forfeiture, by reason of non-payment, so late as November 15, 1890; that they were signed by W. O. Nelson, secretary, and the notice for semi-annual dues was signed by W. O. Nelson, and sent January 8, 1891, when, according to the allegation of the defence, there had been a forfeiture. Now, it appears by another covenant in this contract that only members who had paid their annual assessments were liable to assessments on account of death claims, but, nevertheless, this company, by its secretary, did send this man at least four assessments on account of death claims. You will say, therefore, under the evidence, whether that was a recognition of him as a member, and if that was a waiver of the technical forfeiture by the secretary, who was expressly authorized to do it in writing.] [5]

" [If you find in this case that a reinstatement was asked for by the plaintiff, and the conditions for such reinstatements —all the conditions required by the general agent of the com-

pany—were complied with by him, and that the receipt of the money was taken without further condition, because of an application for a reinstatement, and because of conformity in everything exacted in that regard, and without any further conditions, it would be a good payment and one which would constitute that a valid reinstatement of him, so as to operate to save him from the effect of forfeiture. That resolves itself into a pure question of fact for you and a question as to credibility, under the evidence.] [6]

" [It is probably not necessary for me now to rule directly upon the point to which I have alluded, to wit, that, so late as January, the secretary of the company did assess him as a member of the company, but I stated it to you as going to the entire good faith of the party, and also as to his credibility as to what took place between him and the general agent of the company.] " [7]

Defendant's points were as follows:

" 1. The condition of the policy in suit, which provides that ' If any semi-annual dues or assessments on this policy shall not be paid when due, the consideration of the contract should be held and deemed to have failed and the policy should be null and void,' was binding upon the plaintiff; and if the jury believe, from the evidence, that the plaintiff neglected or failed to pay, for a period of more than thirty days, assessment dated July 15, 1890, then the policy became null and void, and plaintiff's interests became forfeited, and the verdict should be for the defendant." Refused. [8]

" 2. The provision of the policy that ' The contract between the parties hereto is completely set forth in this policy, the application therefor and by-laws of the association, taken together, and none of its terms or provisions can be modified, nor any forfeiture under it waived, except by an agreement in writing, signed by the president or secretary, whose authority for this purpose cannot be delegated,' was binding upon the plaintiff; and if the jury believe, from the evidence, that the plaintiff's interests became forfeited and the policy null and void, because if failure or neglect to pay assessment dated July 15, 1890, or assessment dated August 15, 1890, or assessment dated September 15, 1890, in accordance with the provisions of the policy, and that such forfeiture was not waived by an agreement in writing, signed by the president or secretary, as provided for

in the policy, then the defendant is not liable, and the verdict should be for the defendant. *Answer:* I refuse that proposition, because it does not take into account the other question as to his reinstatement to which I have already referred." [9]

"3. If the jury believe, from the evidence, that, because of failure or neglect on the part of the plaintiff to pay his assessments, his interest became forfeited and his policy null and void, the subsequent receipt by defendant's agent of the assessments, under whatever conditions, if promptly disaffirmed by the company upon knowledge of the transaction, and the money returned, would not be binding upon the company, and the verdict should be for the defendant. *Answer:* I refuse that proposition also, because it entirely ignores the receipt of the money under the application for reinstatement." [10]

"4. Under the contract of insurance in this case the agent, Mr. Balderston, had no authority to waive a forfeiture or to reinstate a person who had allowed his policy to lapse, and any attempt on his part to waive a forfeiture or reinstate a lapsed member would have no effect to bind the company, unless he was so authorized to act by the president or secretary, and in the manner provided for in the contract; and if the jury find, from the evidence, that the president or secretary did not so authorize the agent, the verdict must be for the defendant. *Answer:* As to that proposition, I charge you as follows: I affirm the point that Mr. Balderston had no authority to waive forfeitures. I do not affirm the proposition that he had no power to reinstate a person who allowed his policy to lapse, because, as I have already stated, the policy is silent as to the conditions under which reinstatement can be had, and hence, if the general agent, representing the company generally, submitted certain conditions of reinstatement to the plaintiff, which were complied with, even those were all the conditions required by the company, so far as the evidence goes, and no others were obligatory on plaintiff under the contract." [11]

5. Request for binding instruction. Refused. [12]

Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned* was (1–12) instructions, quoting them.

*A. E. Stockwell,* for appellant, cited: May on Ins., 3d ed. §§ 138, 507; Lantz v. Ins. Co., 139 Pa. 546; Reynolds v. Ins. Co., 36 Mich. 131; Ins. Co. v. Conover, 98 Pa. 384; Ins. Co. v. Im-

provement Co., 100 Pa. 137; Ins. Co. v. Weiss, 106 Pa. 25; Ins. Co. v. Amerman, 119 Ill. 329; Diehl v. Ins. Co., 58 Pa. 443; Ins. Co. v. Laury, 84 Pa. 43; Beatty v. Ins. Co., 66 Pa. 9.

*Wm. W. Wiltbank, H. B. Amerling* with him, for appellee.— The court below was right in leaving the case to the jury.

OPINION BY MR. JUSTICE McCOLLUM, Oct. 1, 1894:

The appellant is a Maryland corporation having its principal office in Baltimore. It has a branch office in Philadelphia in charge of Thomas C. Balderston who is its general agent for Pennsylvania. It is engaged in the business of life insurance. On the 8th of January, 1883, it issued a policy of insurance on the life of the appellee in the sum of one thousand dollars payable to him ten years from the date thereof if he survived that period, and if he did not then to his executors or administrators, ninety days after his death. By the terms of the policy it was to be null and void if the semi-annual dues or assessments upon it were not paid at maturity, and there could be no modification of the provisions of the contract or waiver of any forfeiture under it " except by an agreement in writing signed by the president or secretary of the association." The policy, the application therefor, and the by-laws of the association taken together, constituted the contract between the insurer and the insured. The by-laws provide inter alia that " any member failing to pay his semi-annual payments and pro rata assessments at the death of a member or members within thirty days after he is notified or according to the terms stated in the notice, shall forfeit his membership; " and that " only as many members as shall pay their mortality assessments within thirty days after date of notice shall be counted in determining the assessment basis of the death claims. Others shall be declared forfeited in like manner as those who fail to pay their annual dues, with opportunity for reinstatement on similar conditions." There is nothing in the policy, in the application therefor, or in the by-laws, prescribing the conditions of reinstatment in the case of a forfeiture for non-payment of semi-annual dues, and there is no designation of them in the oral testimony. The assessment notices signed by the secretary of the association and delivered to the appellee informed him that after forfeiture of his policy no payment would be received or reinstatement made except upon the condition that he was alive and in good health.

He might reasonably conclude from these notices that the only condition of restoration to membership in case of forfeiture of his policy was that mentioned in them. Four notices of mortality assessments were sent to him after he failed to make payment of the July assessments within the time prescribed in the by-laws we have quoted, and in them he was requested to remit the assessments to the company's office, or pay the same to its authorized collecting agent. He paid the mortality assessments on the 24th of December, 1890, in accordance with the company's request; he signed and delivered to its representative at its Philadelphia office the application for reinstatement which it prepared and sent to him and he furnished the requisite proofs that he was "in good health and in every respect in a good insurable condition." He received notice January 8th, 1891, of an assessment of his semi-annual dues which he promptly paid. All of these payments were accepted without condition. The company is chargeable with knowledge of the appellee's default when it made these assessments, requested him to pay them, and informed him of the condition on which he could be reinstated in case he failed to make the payments within thirty days from the date of the notice. Its action therefore was clearly inconsistent with a declaration of forfeiture or a purpose to relieve him of the duties and deprive him of the privileges pertaining to membership in it. Such action ought in equity to estop the company from repudiating what was done on the faith of it. It was a recognition of the appellee as a member, and well calculated to create the belief that payment of arrearages and proof of continued good health were all that were required for the preservation of his rights as such. He knew that the by-laws provided for the reinstatement of a member on compliance with the conditions which did not appear in them or in the body of the policy. His sole knowledge of these conditions was derived from the assessment notices received from the company over the signature of its secretary, who was authorized by the contract to waive any forfeiture under it.

In view of the facts recited, all of which appear in the undisputed testimony or are established by the verdict of the jury, we think the appellee was entitled to reinstatement as a member of the defendant company. We discover no error in the instructions complained of and we overrule all the specifications.

Judgment affirmed.